HOME ACRES COMPANY, Respondent, vs. SWENSON-DIBBLE LAND COMPANY, Appellant.

*January 11—February 6, 1923.*

*Pleading: Striking out portions of answer: Discretion of court: Appeal: Contracts: Construction as a whole.*

1. A contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument and not from detached portions.
2. If the trial court refuses to strike out a portion of a pleading the supreme court should be less ready to disturb the ruling than when the motion is granted, because, if the allegations objected to remain, the trial court may by its rulings prevent their being detrimental, while if they are stricken out the pleader has no remedy except by appeal.
3. A motion to strike out portions of a pleading should be denied unless the pleading be clearly irrelevant or scandalous or redundant, the pleadings in such case being construed most favorably to the pleader.

4. Where a grantor conveyed land to his principal creditor under a contract giving the creditor. full power to manage and sell it for the purpose of converting it into cash and paying the grantor's obligations, and also providing that the profits be equally divided with the grantee, the contract must be considered as a whole; and in view of other terms of the contract, a provision that it was to terminate in two years is not construed as cutting off the rights of the grantor in the land and the profits at the expiration of such time.

APPEAL from an order of the circuit court for Dane county: BYRON B. PARK, Judge. *Reversed.*

The complaint alleges that the plaintiff and defendant and the Joseph M. Boyd Company and City Land Company are all Wisconsin corporations located in Madison; that on or about August 8, 1917, the defendant together with the Boyd Company and the City Land Company entered into a contract which was not witnessed or acknowledged by any of the parties; that for the purpose of clouding the title of the plaintiff to the land involved in the contract and to hinder the plaintiff in the management and sale of the property, the defendant, on or about October 29, 1921, caused the same to be witnessed and acknowledged as to the defendant and to be recorded in the Dane county registry; that on or about August 8, 1917, defendant executed and delivered to the City Land Company a deed of the premises; that thereafter the City Land Company conveyed the land to the plaintiff and assigned to the plaintiff all interest in the contract; that the plaintiff and its predecessor had fully kept all the agreements in the contract; that pursuant to the contract the City Land Company executed and delivered a mortgage and trust deed on the premises to secure the payment of $85,000 of its bonds which are unpaid and which were purchased by the Boyd Company as provided in the contract; that plaintiff and its predecessor pursuant to the contract had conveyed portions of the land, and that all the rights of the defendant in the land had ceased August 8, 1919; that defendant had not exercised any of

the options or privileges named in the contract and retained no interest in the land; and that all its rights wholly ceased August 8, 1919, at which time no profits had been realized; that defendant claims an interest in the land and therefore had caused the contract to be recorded, and that such registry will interfere with the management and sale of the premises.

Plaintiff prayed for the relief that the contract be expunged from the records and that defendant be adjudged to have no interest in the land and no demand against the plaintiff, and if it be determined that the defendant has any interest therein that the same be foreclosed within such short and reasonable time as may be just, and that if it be determined that defendant has any claim against plaintiff that there be an accounting; and for such other relief as may be just.

The agreement above mentioned was made part of the complaint, and was entered into August 8, 1917, between the *Swenson-Dibble Land Company,* first party, Boyd Company, second party, and the City Land Company, third party. It recited that the first party had 680 acres of land in Dane county, Wisconsin, and described the same; that certain drainage taxes had been assessed against the land and certain drainage bonds issued for laying a tile drainage system; that the Bank of Wisconsin had advanced to the first party $10,545; that the Boyd Company had advanced to the first party $24,039.20; that the Boyd Company had paid a first mortgage to E. M. Fuller amounting with interest to $31,568.65, making a total indebtedness to the second party of $55,607.85; that the first party had made a cash investment in the land of $17,500; that it was estimated that certain charges and expenses incident to the development of the lands would be $10,000 per year for 1918 and 1919; that the first party was unable to meet the present or future obligations and desired to secure the assistance of the other two parties to aid in saving its enter-

prise; that in order to accomplish this purpose it was deemed best by all parties that said lands be deeded to the third party; and "that the third party be given absolute power, in its own discretion, to sell, deed, manage, and control the said lands, until the same shall have been converted into cash, subject only to the provisions hereinafter set forth for a division of the net profits to be paid to the first party."

It was further recited that in order to accomplish these purposes the Boyd Company was willing to buy an $85,000 issue of bonds to be secured by mortgage on the property. Then followed this section:

"First party shall, forthwith, execute and deliver to the third party a warranty deed of said lands; third party shall immediately take complete charge of said lands, with full power, in its discretion, to sell, deed, lease, cultivate, and to do any and all things necessary or expedient, which, in its sole discretion, are for the best interests of the parties to this agreement, provided only that, in matters of general policy, it shall confer and advise with one of the officers of the first party; and provided, also, that the said lands shall not be sold for less than $150 per acre without the consent in writing of both parties. This power to continue until all of said lands are sold and cash realized upon the same, or until the termination of this agreement. In furtherance of this enterprise, the third party agrees to actively and aggressively push and develop the sale of said lands."

It was further agreed that the third party should execute and deliver a trust deed of the lands to secure such bond issue, due in five years with six per cent. interest payable semi-annually, with privilege of release and payment in accordance with terms to be determined by the third party.

The Boyd Company agreed to purchase the bonds at ninety cents on the dollar, making the net proceeds $76,500, to be handled by the Boyd Company as follows:

"1. Payment to the Bank of Wisconsin of its note and interest to amount of $10,545.

"2. Payment to the second party for money advanced with interest amounting to $24,039.20.

"3. Payment to the second party for money paid upon the Fuller mortgage, amounting to $31,568.65.

"4. The balance, amounting to $10,347.15, shall remain with the second party, at eight per cent. interest per annum, to be credited annually to the account, subject to the order of the board of directors of the third party as hereinafter provided."

It was further agreed that the balance in the hands of the second party should be disbursed by the board of directors of the third party in the payment of drainage and general taxes, drainage bonds and interest, and for such other purposes in the discretion of the directors of the third party as might be necessary or expedient for the development and sale of the property, and that when in the discretion of said directors there was money available for distribution as profits, distribution might be made. The fifth, sixth, seventh, and eighth sections of the agreement were as follows:

"Fifth. When said lands have been sold and cash realized for the same, and all the incumbrances now existing, or hereafter created upon said lands, paid, and all obligations which may have been incurred by the third party in the management, sale, and development of said lands liquidated, and the first party repaid the sum of $17,500 with interest at six per cent. from the date hereof (being its cash investment), then the balance, if any, shall be divided equally between the first party and the third party. It is the intention that, after all debts have been paid, third party shall be paid one half of the net profits realized from said lands for its services in connection therewith, and that the first party shall have an equal amount of the net profits with the third party as representing any interest which it may now have in said lands.

"Sixth. This agreement shall terminate at the end of two years from the date hereof. In the event that all of said lands are not sold within the said period of two years, then the third party may, at its option, extend this agreement for

an additional period of one year, provided such decision be expressed, in writing, to the first party at least sixty days prior to the termination hereof. Like extensions may be made in like manner by the third party for one-year periods until all the said lands are sold.

"Seventh. The first party is hereby granted the option, until and including the 8th day of September, 1917, to pay to second party the face value of the City Land Company bonds, with accrued interest less the discount of $8,500 paid to the second party, or a net amount of $76,500, and upon making such payment shall receive from the third party a quitclaim deed of said lands and a relinquishment of any claim which the second party and the third party may have to any land contracts, cash, or other property belonging to the third party, realized from the sale of the City Land Company bonds, the sale of said lands, or from any other source. During the period of this option, third party agrees that no part of said lands shall be sold for less than $250 per acre.

"Eighth. In the event that the third party fails to exercise its option to renew this contract or any subsequent extension thereof, then the first party may, for the thirty-day period beginning sixty days and ending thirty days prior to the termination of this agreement, or any subsequent extension thereof, secure from the third party a quitclaim deed of said lands, and a relinquishment of any claim which the second party and the third party may have to any land contracts, cash or other property belonging to the third party which has been realized from the sale of the City Land Company bonds, or from the sale of said lands, upon the payment to the second party of the par value and accrued interest of all of the City Land Company bonds outstanding and, in addition, upon the payment to the third party of the sum of $10,000 as 'liquidated profits' in lieu of the profits provided for in paragraph 'Fifth' hereof." ·

The contract was duly executed but not witnessed or acknowledged.

Defendant filed an answer and counterclaim containing a general denial except as admitted, expressly denied, or otherwise stated. The answer admitted the existence of

the corporations, the making of the contract; that defendant caused its signature to be witnessed and acknowledged and the instrument to be recorded; the execution of the deeds named in the complaint to the City Land Company, and that they had been recorded; it also admitted the execution of the trust deed to secure the $85,000 issue of bonds; that they had been purchased by the Boyd Company as provided in the contract; that lands had been sold at different times, and that the contract had not been extended as provided in the sixth section; and that defendant had never exercised the option to re-acquire the legal title.

The answer asserts that defendant has a claim in the land described in the contract and caused the contract to be recorded to protect its interests. The answer then sets forth at length that the City Land Company was a mere holding company organized for the benefit of the Boyd Company and that all its stock was owned by the Boyd Company except three qualifying shares, which were owned by officers, directors, or stockholders of the Boyd Company or those closely affiliated with it; that Joseph M. Boyd, president of the Boyd Company, was the active agent and largely in charge of the City Land Company and the *Home Acres Company;* that in the summer of 1919 the City Land Company and the Boyd Company caused the *Home Acres Company* to be organized, and that its articles of incorporation were signed by stockholders, directors, or employees of the Boyd Company and that all its stock except three shares was owned by the Boyd Company; that when the *Home Acres Company* was organized, and when it secured the deed from the City Land Company, all its officers, stockholders, and agents had full notice of the contract above set forth and of the rights of the defendant; that the *Home Acres Company* was organized for the sole purpose of hindering and delaying the defendant in the protection of its rights and that the *Home Acres Company* had no greater rights than the City Land Company; that immediately

after the *Home Acres Company* was organized that com-
pany and the City Land Company, in order to thwart and
deprive the defendant of its rights, pretended that defend-
ant had no interest in said lands or any benefits derived
therefrom and have ever since ignored such rights and
violated the agreement; that acting through the agency of
Joseph M. Boyd, ever since August, 1919, they have made
trades and exchanges of property without advising with
defendant or its officers, in violation of the contract; that
they have sold land for less than the stipulated price with-
out the consent of defendant; incurred many thousands of
dollars of expense in erecting extensive buildings, contrary
to the former policy, without advising with defendant or
its officers.

The following allegations in the answer were stricken
out:

"That in the fall of 1921 the said Joseph M. Boyd, pre-
tending to act for the said *Home Acres Company* and with
no corporate authority granted to him, entered into an
agreement whereby he exchanged 300 acres of the said
lands for a pretended consideration of $30,000 and took in
payment of the said pretended consideration of $30,000 a
large apartment building in the city of Chicago, Illinois, in-
cumbered with a first mortgage on which there was a balance
of $95,000, and with a second mortgage of $22,500, and
that in pursuance of the said pretended agreement the said
Joseph M. Boyd caused the officers of the said *Home Acres
Company* to execute and deliver a deed of conveyance of the
title to 300 acres of the said lands to the person who owned
the said Chicago apartment building, conveying said lands
free and clear of all incumbrance and acquiring in the name
of the *Home Acres Company* the title to the said apart-
ment building in exchange for said lands, and that the said
Joseph M. Boyd, in pursuance of said scheme, plan and
design, represented and pretended and caused the corporate
records of the said *Home Acres Company* to show that the
consideration received for the said 300 acres of land was
only $30,000, when in truth and in fact the said 300 acres
of land was worth several times that amount, and as this

. defendant verily believes and alleges the fact to be the said 300 acres of land at the said time were worth a minimum of $90,000; that the said Joseph M. Boyd caused the corporate records of said *Home Acres Company* to wrongfully show the value of the said Chicago apartment building was $150,000, and that he well knew that it was worth far in excess of $150,000, and well knew that the equity over and above the mortgages hereinbefore described was worth more than $90,000; and this defendant further shows that the said transaction was made wholly without the knowledge, consent, or approval of this defendant or of any of its officers or agents."

After this followed allegations to the effect that defendant had caused the contract to be witnessed and acknowledged as to its signature to prevent further wrongful disposition of the property and to protect its rights. It was alleged that the *Home Acres Company* and the City Land Company had sold lands on contracts on which there was a balance due of over $42,000 and that plaintiff still held the record title' to 379 acres upon which there had been expended large sums for buildings and improvements which had been charged to the *Home Acres Company* by the Boyd Company.

Then followed the following allegation which was stricken out:

"That as this defendant verily believes, the reasonable value of the said 379 acres with improvements is in excess of $100,000. That the value of the equity of the plaintiff in and to the Chicago apartment building hereinbefore referred to, the title to which is still in the plaintiff, as this defendant is informed and believes, is in excess of $90,000 over and above all outstanding mortgages and incumbrances against it; that the combined value of all of said properties now owned by the plaintiff and which it has in the manner and methods hereinbefore described and set forth derived from the original properties described in the contract attached to the complaint herein, is over $182,000."

It was further alleged upon information and belief that

there had been a large profit made in the handling of the property, exceeding $30,000. The allegations of the answer were also repeated by way of counterclaim. The prayer was that the complaint be dismissed and that plaintiff be required to pay defendant $17,500 with interest, together with one half the balance of the value of the property with which plaintiff is chargeable.

The plaintiff replied to the counterclaim, after which the motion was made to strike out the portions of the answer above stated. The portions stricken out were parts of both the answer and counterclaim.

For the appellant there was a brief by *Gilbert, Ela, Heilman & Raeder* of Madison, and oral argument by *Frank L. Gilbert.*

*Alfred T. Rogers* and *Wm. R. Curkeet,* both of Madison, for the respondent.

JONES, J. In the decision of this motion it is necessary to some extent to construe the contract set forth in the pleadings. It is a familiar rule that:

"A contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument and not from detached portions, it being necessary to consider all of its parts in order to determine the meaning of any particular part as well as of the whole. Individual clauses and particular words must be considered in connection with the rest of the agreement, and all parts of the writing, and every word in it, will, if possible, be given effect." 13 Corp. Jur. 525.

On motion to strike out a portion of a pleading, if the trial court denies the motion an appellate court should be less ready to disturb the ruling than when the motion is granted. This is for the reason that in such case the action of the court is to a considerable extent discretionary. If the allegations objected to are allowed to remain in the pleading the trial court still has the power at the trial by proper

rulings to prevent their being detrimental.    But if allegations vital or important to the cause of action or defense are stricken out the pleader has no remedy except by appeal. Hence in determining whether averments in a pleading should be stricken out they should be construed in a manner most favorable to the pleader, and if they are not irrelevant or scandalous or redundant they should be allowed to remain.

In determining whether the allegations objected to are entirely irrelevant we are compelled to consider to some extent the language of the contract referred to and other allegations in the pleadings.    It appears from the recitals that defendant had invested $17,500 in the property, and besides other debts owed the Boyd Company $55,607.85. It was anticipated that there would be necessary expenses of $10,000 extending through the succeeding two years and that the defendant desired the aid of the Boyd Company and the City Land Company to save its enterprise, and that it was deemed advisable by all parties that the lands be deeded to the City Land Company with the broad powers stated to deed and control the lands until converted into cash, but subject to a duty for division of profits.

In the first paragraph of the contract, after providing that a warranty deed should be executed, the broad powers of sale and control conferred were to be for the best interests of all the parties.    The defendant had the right to confer and advise as to matters of policy; a minimum price per acre was fixed, and the power or control given to the City Land Company was to continue in furtherance of the enterprise until all the lands were sold and cash realized or until the termination of the agreement.    The City Land Company was to aggressively push and develop the sales.

Of course the agreement might have been terminated in various ways.    It might have been ended by mutual consent, or without any express agreement by the sale of all

the lands and a proper distribution of profits, if any, as provided in other terms of the contract.

The second and third paragraphs related to the preparation and sale of a bond issue; payment of a note to the Bank of Wisconsin; payment to the Boyd Company of $55,607.85; and the balance of the proceeds of the bond issue was to be credited on the account.

The fourth paragraph also related to the disbursement of $10,347.15 as might be best for the development and sale of the property and for distribution as profits.

The fifth paragraph provided that after the sale of the lands and the payment of the obligations incurred in the management, sale, and development of the lands, including the sum of $17,500 to the defendant, the balance should be equally divided between the City Land Company and the defendant.

The sixth paragraph is, the one chiefly relied on by the respondent. It contains this sentence: "This agreement shall terminate at the end of two years from the date hereof," and provides that the City Land Company may have extensions of the agreement until all the lands are sold.

The seventh paragraph gives to the defendant the privilege for thirty days of paying the bond issue with interest, and the right on such payment to receive a quitclaim deed; and securing a relinquishment therefor of any claim which the Boyd Company or the City Land Company may have from all sources.

The eighth paragraph provides that in the event that the City Land Company should not obtain extensions of the contract, then the defendant might have thirty days, beginning sixty days and ending thirty days prior to the termination of the contract, or an extension thereof, in which to secure a quitclaim deed and release from the other parties of all their claims by paying to the City Land Company, in addition to the par value and accrued interest

of the City Land Company bonds, $10,000 as liquidated profits in lieu of other profits provided for in the contract.

Counsel for respondent greatly rely upon the sentence in the sixth paragraph declaring that the agreement should terminate at the end of two years. They argue that there was no provision for reconveyance except the two options, as they are called, of thirty days each, for paying the bond issue and $10,000 as liquidated profits. They argue that all contractual right expired at the end of the two years; that defendant had no right to any profits after August 8, 1919.

The question is presented whether the strict construction of the termination clause is to prevail and whether it is the dominating and controlling term of the whole agreement. It was probably the expectation of the parties that if the sales were pushed aggressively as agreed by the City Land Company the whole enterprise could be closed before August 8, 1919, the end of the two-year period. But there are features in the whole contract which lead us to the conclusion that it was not intended that all the rights of the defendant in the land and in profits should absolutely cease on a given date.

It was evidently a contract designed to aid the defendant in its embarrassment, and incidentally to secure to the Boyd Company the payment of a large indebtedness. There runs through the entire contract the thought that there is to be a division of profits after all the lands have been sold; that the agreement was made for the best interests of all the parties; that the City Land Company was to be liberally paid for its services; that very liberal privileges of extending the agreement were given to the City Land Company. It seems quite evident that although it may have been hoped that all the lands could be sold within two years this was uncertain, and it was recited that disbursements were to be provided for through the years 1918 and 1919.

It is argued that the defendant had no right to an extension of the contract beyond the two-year period. The situation did not call for extension so far as it was concerned. Defendant had given over the control of the property and could only await the acts of the City Land Company until the land was sold. Defendant had, it is true, two thirty-day periods for paying up the indebtedness, but in view of the complicated situation this seemed a privilege more nominal than real.

The privilege of extension might be very important to the City Land Company and its successor unless the theory should prevail that all rights of defendant in the land and property were summarily cut off by the termination clause. This clause, in connection with the other terms of the contract, is susceptible of several interpretations.

The one given to it by respondent's counsel seems inconsistent with the whole scope and meaning of the rest of the contract. It will be observed that the clause is accompanied with no express words of forfeiture, and, even if it were, a court of equity would look upon the language with some disfavor.

Counsel for defendant claim that the contract should not be so construed as to cut off the rights of either party to the land and the profits until the contract was terminated by consent, or until the lands were sold and the profits, if any, accounted for. In the alternative, it is claimed that the City Land Company was merely an agent for the Boyd Company for the purpose of holding the deed in order that the Boyd Company might act as trustee of its own bond issue, and that the only effect of the termination clause was to put an end to the right of the City Land Company to sell the land. As another alternative it is claimed that the whole transaction amounted to a mortgage and that in any event defendant is entitled to an accounting, and many cases are cited to that contention.

There is no claim that the averments objected to are

redundant or scandalous under the statute, but it is urged that they are irrelevant. Allegations in a pleading should not be stricken out as irrelevant if there is serious doubt on the question. This is especially true in complicated cases where evidence of the acts and conduct of parties not necessarily stated in the pleadings may have a bearing in arriving at the real meaning of parties in their contracts or relations with each other. After hearing the evidence the trial court will have a better opportunity than we have for determining the legal effect of the contract, and for that reason we only decide that as we construe the contract and the pleadings the rights of the defendant in the land and in profits, if any, did not cease August 8, 1919.

It may be added that preceding the averments stricken out there are other allegations of violation of the contract after August 8, 1919, of the same general character, although not so specific as those which were stricken out. If the allegations objected to had been omitted from the answer, and if on motion by plaintiff an order had been made to make the pleading more definite and certain and these allegations had been added, they would have been quite consistent with the other averments in the answer and counterclaim.

We hold that the portions of the pleadings stricken out were not irrelevant.

*By the Court.*—Order reversed, and cause remanded for further proceedings according to law.